UNITED STATES DISTRICT COURT
District of Minnesota
Criminal File Number 18-90 (RWP/CFB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | **SUPERSEDING INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 115(a)(1)(B) |
| | 18 U.S.C. § 875(c) |
| v. | |
| ROBERT PHILLIP IVERS, | |
| Defendant. | |

THE UNITED STATES GRAND JURY CHARGES THAT:

## BACKGROUND

1. In February of 2015, Defendant Robert Philip IVERS filed a pro se civil breach-of-contract lawsuit against a life insurance company in Minnesota state court. The case was removed to United States District Court in Minnesota and assigned to a known United States District Court Judge, hereinafter referred to as "Judge A." The insurance company filed a counterclaim against IVERS.

2. In January of 2017, Judge A conducted a bench trial on IVERS' lawsuit, at which IVERS represented himself. On June 29, 2017, Judge A issued the Court's Findings of Fact, Conclusions of Law, and Order, in which Judge A denied IVERS' claims and granted the insurance company's counterclaims.

3. During the litigation of the case before Judge A, IVERS sent multiple letters to Judge A accusing Judge A of being corrupt or incompetent and alleging that Judge A was out to get him. At one point, IVERS sent a letter to Judge A in which he wrote, "I am

SCANNED
AUG 21 2018

in dire fucking straights!" and "I am becoming a very dangerous person!!!" During the trial, IVERS engaged in disruptive conduct in the courtroom. Deputy U.S. Marshals spoke with IVERS about his communications with the Court and about his disruptive conduct during the trial, and they asked him to refrain from both. The U.S. Marshals Service is responsible for the security and protection of United States District Court Judges.

4. IVERS thereafter contacted Judge A's chambers to obtain a hearing date for a motion for a new trial. On July 21, 2017, the Court informed IVERS that a hearing date was reserved for September 18, 2017, but that IVERS needed to file a notice of hearing and motion papers consistent with Local Rules. IVERS, however, did not file a motion for a new trial within the required time period, and accordingly Judge A cancelled the September hearing.

5. After Judge A entered judgment against IVERS, on or about August 23, 2017, IVERS placed a telephone call to the Courtroom Deputy Clerk for the Chief Judge of the District of Minnesota, in which he told the clerk that he was very upset with Judge A. During the call, IVERS was agitated and described himself as "a walking bomb." IVERS further said he was crazy mad and that he did not know how to deal with it.

6. On September 1, 2017, Deputy U.S. Marshals met with IVERS to speak with him about his call to the Chief Judge's clerk. The Deputy Marshals asked IVERS about being "a ticking time bomb," to which IVERS responded, "I am!" IVERS also stated, "I'm out of my fucking mind right now and I want you to tell them. My friend left me $100,000 and this fucking judge snatched it right out from under me." IVERS went on to state, "I'm out of my mind crazy fucking angry, and tell the federal judges that this guy is out of his

fucking mind crazy!" IVERS further said he was glad the judge's clerk reported his statement, "because I'm glad they took it seriously." IVERS continued complaining about Judge A, including stating, "that fucking judge ... if [Judge A is] scared, and if [Judge A is] fearful, it's not my problem."

7. On November 9, 2017, IVERS filed a new civil lawsuit against the same life insurance company that was involved in the case he lost in front of Judge A, based on essentially the same facts as the earlier case. The new case was not assigned to Judge A, but instead was assigned to a different United States District Court Judge for the District of Minnesota (hereinafter referred to as Judge B).

8. In connection with his new civil case, IVERS was referred to the Federal Pro Se Project, which connects pro se litigants with volunteer lawyers for pro bono assistance. Two attorneys, Attorney A and Attorney B, contacted IVERS by telephone for a consultation through the Pro Se Project. During the call, Attorney A and Attorney B were together in an office in Minneapolis on a speakerphone, while IVERS was in West Fargo, North Dakota. During the call, the attorneys discussed IVERS' case before Judge B and gave IVERS their assessment as to whether they believed he had a viable legal claim.

9. After the attorneys had finished discussing IVERS' case before Judge B, IVERS began talking about his previous case with Judge A. Attorney A stated that it was as if "a switch flipped" when IVERS started talking about Judge A and he became "intensely angry." During this portion of the call, IVERS was yelling and swearing about Judge A, stating that he was upset with how Judge A treated him in that case. Attorney A stated that IVERS made the following statements concerning Judge A:

- "This fucking judge stole my life from me."
- "I had overwhelming evidence."
- The Judge "stacked the deck" to make sure I lost this case.
- I was "going to throw some chairs."
- "You don't know the fifty different ways I planned to kill her."

10. Attorney A reported that based on IVERS' angry demeanor, the escalation of his anger while he was talking about Judge A, and the totality of his communications during the call, she was concerned IVERS would take future action and therefore reported the threats to the U.S. Marshals Service.

11. On March 14, 2018, two Deputy U.S. Marshals spoke to IVERS at a residence in West Fargo, North Dakota, belonging to his sister. The Deputy Marshals identified themselves to IVERS' sister, who informed IVERS the Deputy Marshals wished to speak to him. IVERS eventually opened the door, told the Deputy Marshals to go away unless they had a warrant, and slammed the door closed. The Deputy Marshals rang the doorbell several more times.

12. After one of these attempts, the Deputy Marshals explained to IVERS' sister that they were there to ask about a threat made by IVERS against Judge A. IVERS did not come to the door immediately, but the Deputy Marshals heard IVERS say he did not remember making any "bullshit statement." IVERS then came to the door and asked the Deputy U.S. Marshals whether they had the statement recorded. When told they did not, IVERS further stated: "and that fucking judge, you wanna know what, if [Judge A] doesn't sleep very good, fuck [Judge A]!" IVERS then said to his sister "that's the fucking judge

4

that stole my money." The Deputy Marshals also later heard IVERS, back inside the house, yelling "that fucking [racial epithet] fucking judge stole my future." During the time that the Deputy Marshals were speaking with IVERS, he was very agitated and would not stand still, and he hit the door and the wall of the house with his hands several times.

13. IVERS' sister stepped outside of the house to speak more with the Deputy Marshals, closing the door to the residence because IVERS was continuing to yell and interrupt them. As they were speaking, IVERS reopened the door and yelled "that fucking judge stole my life . . . fuck [Judge A]," and then slammed the door shut. A short time later, IVERS again opened the door and yelled "you tell them I'm crazy fucking angry."

## COUNT 1
(Threatening To Murder a Federal Judge)

14. Paragraphs 1 through 13 are re-alleged and incorporated herein,

15. On or about February 27, 2018, in the State and District of Minnesota, the defendant,

**ROBERT PHILLIP IVERS,**

did threaten to murder a known United States Judge, with intent to impede, intimidate, and interfere with the Judge while such Judge was engaged in the performance of the Judge's official duties, and to retaliate against such Judge on account of the performance of the Judge's official duties, in violation of Title 18, United States Code, Section 115(a)(1)(B).

## COUNT 2
(Interstate Transmission of a Threat To Injure the Person of Another)

16. Paragraphs 1 through 13 are re-alleged and incorporated herein,

17. On or about February 27, 2018, in the State and District of Minnesota, the defendant,

**ROBERT PHILLIP IVERS,**

knowingly and willfully did transmit in interstate or foreign commerce a communication, specifically, a phone call to Attorney A, and the communication contained a threat to injure the person of another, to wit, a Federal Judge, in violation of Title 18, United States Code, Section 875(c).

A TRUE BILL

_____        _____
UNITED STATES ATTORNEY              FOREPERSON