UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

          Plaintiff,

No. 0:18-cr-00090 (RWP/CFB)

v.

**ORDER**

Robert Phillip Ivers,

          Defendant.

Before the Court is Defendant Robert Phillip Ivers's motion for acquittal or, in the alternative, motion for new trial, filed on September 28, 2018. ECF No. 147. The Government has not filed a response. The matter is fully submitted.

## I. PROCEDURAL BACKGROUND

On August 21, 2018, a grand jury returned a Superseding Indictment charging Defendant with one count of Threatening to Murder a Federal Judge, in violation of 18 U.S.C. § 115(a)(1)(B), and one count of Interstate Transmission of a Threat to Injure the Person of Another, in violation of 18 U.S.C. § 875(c), in relation to a threat Defendant made against a federal judge during a phone call with two attorneys on February 27, 2018. ECF No. 83. Defendant stood trial on these charges, and on September 14, 2018, the jury returned guilty verdicts on both counts. ECF No. 138. At the close of the Government's case-in-chief, ECF No. 157 at 175–76, and again at the close of all the evidence, ECF No. 155 at 21, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court overruled Defendant's motions. ECF Nos. 155 at 21, 157 at 177.

Defendant now renews his motion for judgment of acquittal as to both counts and, in the

alternative, requests a new trial pursuant to Rule 33. ECF No. 147. In his motion, Defendant claims there was insufficient evidence that he made a threat presently or in the future against Judge A on February 27, 2018, as charged in the Superseding Indictment. *Id.* Alternatively, he claims the Court should grant him a new trial because the jury's verdict was against the weight of the evidence. *Id.*

## II. ANALYSIS

### A. *Motion for Judgment of Acquittal*

This Court "must enter a judgment of acquittal if the evidence presented at trial is insufficient to sustain a conviction." *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007) (citing Fed. R. Crim. P. 29(a)). "This standard is 'very strict' and a jury's verdict should not be overturned lightly." *Id.* (quoting *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005)). Therefore, "[a] motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *Id.* (quoting *United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006)); *accord United States v. Moore*, 108 F.3d 878, 881 (8th Cir. 1997) ("The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.").

In considering a motion for judgment of acquittal based on the sufficiency of the evidence presented at trial, the Court must "view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence." *United States v. Basile*, 109 F.3d 1304, 1310 (8th Cir. 1997); *see also United States v. Lincoln*, 630 F.2d 1313, 1316 (8th Cir. 1980) (noting both the trial and appellate courts apply the same principles when reviewing the sufficiency of the evidence to sustain the

jury's verdict). The Court "can overturn the jury's verdict only if 'a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one'" or more of the essential elements of the crimes charged. *United States v. Kinshaw*, 71 F.3d 268, 271 (8th Cir. 1995) (quoting *United States v. Nunn*, 940 F.2d 1128, 1131 (8th Cir. 1991)). "This standard applies even when the conviction rests entirely on circumstantial evidence." *United States v. Davis*, 103 F.3d 660, 667 (8th Cir. 1996). In reviewing the evidence presented to the jury, it is important to note "[t]he evidence need not exclude every reasonable hypothesis except guilt." *United States v. Baker*, 98 F.3d 330, 338 (8th Cir. 1996) (quoting *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir. 1992)). Finally, the Court must not "weigh the evidence or assess the credibility of witnesses," because this is the role of the jury alone. *United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004).

Under § 115(a)(1)(B), the Government must prove beyond a reasonable doubt that Defendant "threaten[ed] to . . . murder . . . a United States judge . . . with intent to retaliate against such . . . judge . . . on account of the performance of official duties." 18 U.S.C. § 115(a)(1). "[Section] 115(a)(1)(B) 'includes both objective and subjective elements:' a true threat to assault or murder a federal employee, and the intent to retaliate against the employee 'on account of the performance of official duties.'" *United States v. Wynn*, 827 F.3d 778, 785 (8th Cir. 2016) (quoting *United States v. Turner*, 720 F.3d 411, 420 (2d Cir. 2013)). However, the Government need not show "that the threat was credible or could be immediately carried out." *United States v. Schiefen*, 139 F.3d 638, 639 (8th Cir. 1998) (quoting *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997)); *see also United States v. Miller*, 340 Fed. App'x 335, 339 (7th Cir. 2009) ("[Section] 115(a)(1)(B) . . . prohibit[s] *making* a threat; it is irrelevant whether the defendant intended to carry out the threat or even had the ability to do so."). Under

3

§ 875(c), the government must prove beyond a reasonable doubt that a defendant knowingly "transmit[ted] in interstate or foreign commerce any communication containing . . . any threat to injure the person of another." 18 U.S.C. § 875(c). In other words, the Government had to prove that Defendant "intended for the communication to be threatening or at least knew that the communication would be viewed as threatening." *United States v. LaFontaine*, 847 F.3d 974, 979 (8th Cir. 2017) (citing *Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015) ("[T]he mental state requirement in [§] 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat."))[1]

Essentially, Defendant rehashes his argument that implicit in § 115(a)(1) and § 875(c) is the requirement that the Government "show that [Defendant] actually said words that a reasonable person would interpret as a serious expression of an intention to injure the person of another *now or in the future*." ECF No. 147 at 3 (emphasis added) (citing *United States v. Stock*, 728 F.3d 287, 293–95 (3rd Cir. 2013)). He asserts the Eighth Circuit has adopted this temporal element in holding, "To determine whether a true threat exists, a court must analyze the alleged threat in light of its 'entire factual context' and determine 'whether the recipient of the alleged threat could reasonably conclude that it expresses a determination or *intent to injure presently or in the future*.'"[2] *United States v. Hart*, 212 F.3d 1067, 1071 (8th Cir. 2000) (emphasis added) (quoting *United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996)). Thus, he claims, the

---

[1] In *Wynn*, the Eighth Circuit held that "intent to retaliate" was sufficient to differentiate "wrongful conduct from otherwise innocent conduct," *Elonis*, 135 S. Ct. at 2010, and thus that the heightened mens rea *Elonis* requires for threats under § 875(c) does not apply to threats under § 115(a)(1). *Wynn*, 827 F.3d at 785.

[2] In his Motion to Dismiss Superseding Indictment, Defendant claimed the threatening statements he made toward Judge A were protected by the First Amendment because they did not constitute "true threats" as they were stated in the past tense. ECF No. 88. The Court continues to interpret Defendant's "true threats" argument as a claim that his speech was protected under the First Amendment.

4

Government failed to present sufficient evidence that he threatened Judge A because the language he used during the phone call was past tense—he told his attorneys that they did not know the fifty different ways he had "imagined" or "planned" to kill Judge A. He further claims that beyond the tense of the language, his statement only indicated what he had been thinking, which is not a threat.

"[A] true threat is a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." *Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002). The Eighth Circuit has set forth a nonexhaustive list of factors that are relevant when considering how a reasonable person would interpret a purported threat, including

> (1) the reaction of those who heard the alleged threat; (2) whether the threat was conditional; (3) whether the person who made the alleged threat communicated it directly to the object of the threat; (4) whether the speaker had a history of making threats against the person purportedly threatened; and (5) whether the recipient had a reason to believe that the speaker had a propensity to engage in violence.

*Id.* at 623 (citing *Dinwiddie*, 76 F.3d at 925). "In determining whether a communication is a threat . . . , 'the communication must be viewed in "textual context and also in the context of the totality of the circumstances in which the communication was made."'" *United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013) (quoting *United States v. Floyd*, 458 F.3d 844, 849 (8th Cir. 2006)). In *Stock*, the Third Circuit similarly noted, "in the right context, an expression of an intent to injure in the past may be circumstantial evidence of an intent to injure in the present or the future." 728 F.3d at 300. Furthermore, the word "threat," when referring "to the speaker's intent, . . . is an inherently prospective concept," *id.* at 294; thus, the word "threat" itself implies "an intent to inflict injury in the present or future," *id.* at 297.

At trial, the Government presented the testimony of two attorneys, who each testified that

Defendant, who was a prospective client of theirs, told them during a phone call on February 27, 2018, something to the effect of "You don't know the fifty different ways I planned to kill her." ECF No. 154 at 230, 259, 263; ECF No. 157 at 7, 61–62. *But see* ECF No. 154 at 291 ("[H]e said he'd imagined fifty different ways to kill her."); ECF No. 157 at 34 ("I remember him saying you don't know the fifty different ways I planned or thought of killing her."). Defendant made additional statements about Judge A, including, "The judge stacked the deck against me to make sure I lost the case"; "I had overwhelming evidence"; "She is lucky . . . I was going to throw some chairs"; and "This fucking judge stole my life from me." ECF No. 154 at 262–63; Gov't Tr. Ex. 15. At the time of the call, Defendant was at his sister's home in North Dakota and the two attorneys were located in Minnesota. *See, e.g.*, ECF No. 157 at 139–42. Those same two attorneys testified at trial that they had interpreted the Defendant's statement to be a present and serious threat to murder Judge A. ECF No. 154 at 264, 267, 271–72, 280; ECF No. 157 at 38–39.

The Government presented evidence that Judge A had presided over Defendant's civil case against a life insurance company in which Judge A ruled against Defendant following a bench trial. ECF No. 152 at 92, 98. The Government also presented evidence that Defendant was unhappy with Judge A's decision and had felt "cheated" following her ruling. *Id.* at 108, 110, 112; ECF No. 154 at 91, 93, 168; *see also* ECF No. 157 at 289–90, 294–97, 301. The evidence further showed Defendant had mailed in several letters to the court following his civil trial that Judge A's courtroom deputy found to be concerning and threatening, one of which stated, "I am in dire fucking straits. I am becoming a very dangerous person." *See, e.g.*, ECF No. 152 at 82; ECF No. 154 at 26; *see also* ECF No. 143. Defendant also called the Chief Judge's chambers to complain, telling the Chief's courtroom deputy how angry he was and that

he was a "walking bomb," which caused the courtroom deputy to be concerned for Judge A's safety as she found the language to be threatening. ECF No. 154 at 170, 172, 192.

The Government also presented evidence that a U.S. Marshal assigned to investigate the letters Defendant had mailed to the court had spoken with Defendant on more than one occasion and warned him that the things he was writing in the letters could be interpreted as a threat. *See* ECF No. 154 at 39, 42, 43, 46, 62, 66, 67, 90, 96–97. The Government presented additional evidence that Defendant had previously been charged in state court for terroristic threats and stalking as a result of making repeated, threatening and vulgar phone calls to a state court judge. ECF No. 157 at 309–11. On cross-examination, Defendant testified that he was glad Judge A had been scared by his words because "[s]he screwed me out of a hundred thousand dollars by not giving me a jury trial. She stacked the deck. She stole my life." ECF No. 157 at 324. And although Defendant repeatedly denied ever threatening Judge A or even making the threatening statement, *see, e.g.*, ECF No. 157 at 308, 327, the Government presented evidence that Defendant did not later apologize or appear remorseful regarding the statement. ECF No. 157 at 171.

In viewing the evidence in the light most favorable to the verdict, a reasonable jury could conclude that, based upon the context, when Defendant told the two attorneys he had "planned" or "imagined" multiple ways of killing Judge A, he expressed an intent to injure Judge A in the present or future, and the two attorneys interpreted it as such. A reasonable jury could also conclude that Defendant made the threat with the intent to retaliate against Judge A on account of the performance of her official duties. A reasonable jury could also conclude that, based upon the repeated warnings Defendant received, he knew his statement would be perceived as a threat, and he intentionally communicated that threat through interstate commerce. Accordingly, the

Court concludes sufficient evidence supports the jury's verdict as to both counts. *See Stock*, 728 F.3d at 298 ("In the usual case, whether a communication constitutes a threat . . . 'is a matter to be decided by the trier of fact.'"); *United States v. Saunders*, 166 F.3d 907, 912 (7th Cir. 1999) ("Whether the statement constitutes a threat was an issue of fact for the jury to decide.").

### B. *Motion for New Trial*

Federal Rule of Criminal Procedure 33(a) provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." This Court has broad discretion in passing upon motions for new trial, and its decision is subject to reversal only for a clear abuse of discretion. *See United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007). Unlike a motion for judgment of acquittal, the Court need not view the evidence in the light most favorable to the Government when considering a motion for a new trial. Rather, in assessing whether Defendant is entitled to a new trial on the ground that the verdict is contrary to the weight of the evidence, "the district court weighs the evidence and evaluates anew the credibility of the witnesses to determine if a miscarriage of justice may have occurred." *Davis*, 103 F.3d at 668.

The Eighth Circuit has also warned that the authority to grant a Rule 33 motion for new trial "should be exercised sparingly and with caution." *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980). This Court's discretion in determining whether a new trial is warranted "is abused if it does not take into account a matter that should have been given significant weight, gives significant weight to something improper or irrelevant, or 'commits a clear error of judgment.'" *Bass*, 478 F.3d at 951 (quoting *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004)).

In support of his motion, Defendant argues the jury's verdicts were against the weight of

the evidence because the words he uttered "simply do not constitute a threat." ECF No. 147 at 5. He essentially makes the same argument as he did in his motion for acquittal—that the facts of this case compel a different result. He also asserts he did not communicate the threat to the judge herself or to one of her staff members. He suggests that because the two attorneys who heard the threat did not know of his history of threatening judges or sending angry communications to the court, the Court should not credit their testimony that they interpreted his statement as a threat.

Based on the facts discussed above, and when not viewing the evidence in the light most favorable to the verdicts but rather weighing the evidence and the credibility of the witnesses as the court must in considering a motion for new trial, the Court finds that the weight of the evidence presented at trial supports the jury's verdicts. The jury's verdicts did not result in a miscarriage of justice, and Defendant's motion for new trial is denied.

### III.  CONCLUSION

Accordingly, Defendant's Motion for Acquittal (ECF No. 147) is DENIED.

IT IS SO ORDERED.

Dated this 2nd day of January, 2019.

_____
ROBERT W. PRATT, Judge
U.S. DISTRICT COURT