United States Court of Appeals
For the Eighth Circuit

_____

No. 21-3478
_____

United States of America

*Plaintiff - Appellee*

v.

Robert Phillip Ivers

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 11, 2022
Filed: August 10, 2022
_____

Before ERICKSON, MELLOY, and KOBES, Circuit Judges.
_____

MELLOY, Circuit Judge.

    This appeal arises from Robert Ivers's third revocation of supervised release hearing. Mr. Ivers alleges that during the third revocation hearing, the district court violated his right to due process because it forced him to proceed either with an incompetent attorney or without any attorney at all. Because we find Mr. Ivers was denied the right to counsel, we reverse.

I.

Mr. Ivers was convicted of threatening to murder a federal judge and interstate transmission of a threat. The district court sentenced Mr. Ivers to 18 months' imprisonment, followed by three years of supervised release. Mr. Ivers began his term of supervision in August 2019. The district court revoked his supervised release twice. He was last released from prison on September 7, 2021.

On September 10, 2021, the U.S. Probation Office petitioned to revoke Mr. Ivers's supervised release for a third time. The Probation Office alleged that Mr. Ivers had violated the terms of his supervised release in three ways: (1) failure to follow the instructions of the Probation Officer; (2) failure to reside in a residential reentry center; and (3) failure to maintain appropriate communications with the Probation Officer.

The district court held a revocation hearing on October 18, 2021. Mr. Ivers appeared at the hearing with appointed counsel. His appointed attorney was not the same attorney who had represented Mr. Ivers in his previous revocation proceedings. At the beginning of the hearing, Mr. Ivers's attorney informed the district court that Mr. Ivers did not want the attorney to represent him.

Mr. Ivers agreed. He told the district court he wanted his previous attorney to represent him because "[s]he knows my case inside and out." Mr. Ivers stated that he did not want his new attorney because the attorney had "acknowledged that he doesn't know anything about my case." Particularly, Mr. Ivers expressed concern because the appointed attorney did not know what the charges against Mr. Ivers were. The attorney admitted he told Mr. Ivers that he "was as dumb as a doorbell or a doorknob." According to Mr. Ivers, the attorney also said that he slid through law school and that Mr. Ivers would have to "pick the big house or the nut house." Mr. Ivers eventually asked if he could have a different attorney.

The district court gave Mr. Ivers a choice: he could have his appointed attorney represent him, or he could represent himself "but [he had] to pick one or the other." Mr. Ivers opted for self-representation, although he did indicate he "wouldn't mind having a qualified attorney sit next to" him. Based on Mr. Ivers's statement, the district court conducted a Faretta colloquy with Mr. Ivers. See Faretta v. California, 422 U.S. 806 (1975). The district court confirmed that Mr. Ivers understood he had a right to an attorney at government expense, he could be incarcerated if the court found he violated supervised release, and the hearing would be governed by the Federal Rules of Evidence and Federal Rules of Criminal Procedure. The district court advised Mr. Ivers it was unwise for him to represent himself. Mr. Ivers confirmed he wanted to represent himself. The district court found that Mr. Ivers knowingly and voluntarily waived his right to counsel.

The appointed counsel did not dispute Mr. Ivers's statement that the attorney did not know the charges, nor did the district court conduct a colloquy with the attorney. The district court did not inquire about the attorney's understanding of the charges against Mr. Ivers or the attorney's competency to represent Mr. Ivers.

II.

When a defendant waives his right to counsel at a revocation hearing, we review the district court's decision to accept that waiver for abuse of discretion. United States v. Owen, 854 F.3d 536, 542 (8th Cir. 2017).

Defendants have a statutory right to counsel in revocation of supervised release hearings. Id. at 541; see also 18 U.S.C. § 3006A(a)(1)(E); Fed. R. Crim. P. 32.1(b)(2)(D). Although this right does not arise from the Sixth Amendment, waiver of the right does implicate liberty interests. Owen, 854 F.3d at 542. Therefore, when a defendant waives his right to counsel at a revocation hearing, "we must examine whether the district court's acceptance of that waiver violated his right to due process." Id. The due process inquiry is flexible and "focuse[s] on the fundamental

-3-

fairness of the hearing." Id. (quoting United States v. Boultinghouse, 784 F.3d 1163, 1172 (7th Cir. 2015)).

A waiver of the right to counsel in revocation proceedings "must be knowing and voluntary as demonstrated either through a colloquy with the district court, or by the totality of the circumstances, or both." Id. at 543 (quoting United States v. Hodges, 460 F.3d 646, 648 (5th Cir. 2006)).  Although the right is not constitutional, "Sixth Amendment cases which elaborate on the requirements for a knowing and voluntary waiver of one's right to an attorney remain relevant in the revocation context." Id. at 542 (quoting Boultinghouse, 784 F.3d at 1172).

A defendant "does not have an absolute right to counsel of his own choosing." Id. (quoting United States v. Mentzos, 462 F.3d 830, 839 (8th Cir. 2006)). Therefore, the district court does not violate the right to counsel when it gives a defendant the choice "between adequate representation and self-representation." Id. (quoting Mentzos, 462 F.3d at 839).  The choice is not voluntary, however, if the district court forces a defendant to choose inadequate counsel or no counsel. Id.  To show his waiver of the right to counsel was involuntary, a defendant must show the district court forced him to choose between inadequate representation and self-representation. Id.  Thus, to show a violation of the right to counsel, the defendant must show justifiable dissatisfaction with his attorney. Id.

### III.

Mr. Ivers has shown he was justifiably dissatisfied with his attorney.  This is not a case where the evidence shows a defendant who disagrees with his attorney's strategy or wants to delay the hearing.  Instead, the evidence shows an attorney who was not prepared to handle a revocation of supervised release hearing.  The attorney stated he "was as dumb as a doorbell or a doorknob" and told Mr. Ivers that Mr. Ivers would have to "pick the big house or the nut house."  The attorney did not know

-4-

anything about Mr. Ivers's case or what conditions of supervision Mr. Ivers had allegedly violated.

Under these circumstances, Mr. Ivers's appointed attorney was unprepared to handle the revocation hearing. In these hearings, an attorney unaware of the alleged violations cannot adequately defend against them or make adequate mitigation arguments. The attorney's comment regarding "the big house or the nut house" demonstrates he did not know the factual background of the case or the potential consequences that Mr. Ivers was facing. Because Mr. Ivers was forced to proceed with either this unprepared attorney or no attorney at all, Mr. Ivers's decision to waive his right to counsel was not knowing and voluntary and his right to due process was violated.[1]

### IV.

Mr. Ivers has shown justifiable dissatisfaction with his attorney. His decision to waive his right to counsel was, therefore, not knowing and voluntary.

---

[1] The dissent makes the point that there is no prejudice in this case because the evidence of Mr. Ivers's violation of the terms of his supervised release is overwhelming. However, a review of the transcript of the supervised revocation hearing shows the prejudice resulting from lack of counsel. Mr. Ivers appears to have attempted to show that there was confusion as to whether he was required to report to a halfway house or could live with his sister (where he was living at the time of his arrest) and that he had serious medical issues (including bladder cancer) that either excused or mitigated his violation. The transcript shows the great difficulty Mr. Ivers had in getting exhibits authenticated and admitted into evidence and framing questions in a way that did not lead to sustainable objections. At a minimum a competent attorney may have been able to more effectively advocate for a sentence of less than a full additional year in prison, particularly given Mr. Ivers's age and very serious medical issues.

Accordingly, we reverse the revocation judgment and remand for further proceedings.[2]

KOBES, Circuit Judge, dissenting.

I respectfully dissent.

Even assuming that the district court abused its discretion by allowing Ivers to represent himself at the revocation hearing, we reverse for a violation of a statutory right to counsel only on a showing of prejudice. *See United States v. Brown*, 710 F. App'x 722, 723 (8th Cir. 2018) (per curiam) (citing *Njoroge v. Holder*, 753 F.3d 809, 812 (8th Cir. 2014) (holding that a showing of prejudice is required before reversing due to a violation of the statutory right to counsel in immigration proceedings)). As we have explained in the context of the statutory right to counsel in immigration proceedings:

> "Actual prejudice exists where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." The Ninth Circuit has similarly defined "prejudice" as an error that "potentially affects the outcome of the proceedings," and the Seventh Circuit has defined it as an error that "had the potential for affecting the outcome of the hearing."

---

[2]Mr. Ivers filed several pro se motions in this court. Mr. Ivers's March 7 "Motion for Early Release Pending Motion to Set Aside Previous Convictions" is denied. Mr. Ivers's March 8 "Motion to Have Mr. Ivers Convictions Set Aside" is denied. Mr. Ivers's April 26 "Motion for Time Served" is denied as moot. Mr. Ivers's April 29 "Motion for Hard Time Credit" is denied without prejudice as to Mr. Ivers's ability to seek the requested relief upon remand to the district court.

*Al Khouri v. Ashcroft*, 362 F.3d 461, 466 (8th Cir. 2004) (first quoting *United States v. Torres-Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995); then quoting *Agyeman v. INS*, 296 F.3d 871, 884 (9th Cir. 2002); and then quoting *Ambati v. Reno*, 233 F.3d 1054, 1061 (7th Cir. 2000)) (emphasis omitted) (cleaned up).

There was no prejudice. This was Ivers's third revocation. The petition to revoke was filed a mere three days after he was released from prison. And there was no question that Ivers violated his terms of release. He never showed up to a re-entry facility and instead headed for his sister's, eventually taking time to leave an expletive-laden, threatening voicemail for his probation officer. Based on this undisputed record, the district court was entirely justified in revoking supervised release. It was not a close call.

Nor was the above-Guidelines sentence of 12 months in prison unreasonable. He had received six-month sentences on each of his previous revocations. The district court also noted that Ivers had been shown leniency in his original sentence for threatening to murder a federal judge and that Ivers was not showing signs of rehabilitation. Because the court fully considered all mitigating and aggravating factors, I would affirm.

_____